IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMBERLINE DRILLING, INC., an Idaho corporation; SUPPLEMENTAL INCOME AGREEMENT,<br><br>                Plaintiff,<br><br>   vs.<br><br>AMERICAN DRILLING CORP., LLC, a Nevada limited liability company; AMERICAN DRILLING CORPORATION, a Nevada corporation; and STEVEN ELLOWAY, an individual,<br><br>            Defendants. | CIVIL ACTION NO. CV-09-18-N-EJL<br><br>**MEMORANDUM ORDER** |

On January 22, 2009, the Court granted a temporary restraining order in favor of Plaintiff Timberline Drilling, Inc. ("Timberline"). The Court now has before it Timberline's request for a preliminary injunction against American Drilling Corp. LLC ("American Drilling LLC"), American Drilling Corporation ("American Drilling Corp."), and Steven Elloway ("Elloway") (collectively referred to as "the Defendants"). The Court held a hearing on the request for preliminary injunction on February 11, 2009. After argument, the Court referred the matter for a settlement conference before United States Magistrate Judge Larry M. Boyle. The Court has been advised that the settlement negotiations were not successful. Accordingly, the Court will issue its ruling on the pending request for a preliminary injunction.

## Standard of Review

Preliminary injunctions are designed to preserve the status quo pending the ultimate outcome of litigation. They are governed by Federal Rule of Civil Procedure 65(b) which requires the moving party to show that "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party . . . can be heard in opposition...." Under Rule 65(b) and Ninth Circuit case law, a plaintiff may obtain a

preliminary injunction only where he or she can "*demonstrate* immediate threatened injury." See, e.g., Caribbean Marine Servs. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original).

While courts are given considerable discretion in deciding whether a preliminary injunction should enter, injunctive relief is not obtained as a matter of right and it is considered to be an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.  See: Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed. 2d 166 (1974); Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1435 (1960); and Stanley v. Univ. of Southern California, 13 F.3d 1313 (9th Cir. 1994).

In the case of Martin v. International Olympic Committee, 740 F.2d 670, 674-675 (9th Cir. 1984), the Ninth Circuit stated that a party seeking preliminary injunctive relief must meet one of two tests.  Under the first,

> [A] court may issue a preliminary injunction if it finds that: (1) the [moving party] will suffer irreparable harm if injunctive relief is not granted, (2) the [moving party] will probably prevail on the merits, (3) in balancing the equities, the [non-moving] party will not be harmed more than [the moving party] is helped by the injunction, and (4) granting the injunction is in the public interest.

Id. (internal quotations and citations omitted); and Stanley v. Univ. of Southern California, 13 F.3d 1313, 1319 (9th Cir. 1994).  Under the second, the movant must show "either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the

MEMORANDUM ORDER - 2

merits." <u>Miller v. California Pacific Medical Center</u>, 19 F.3d 449, 456 (9th Cir. 1994) (en banc).  This alternative test is on a sliding scale: the greater the likelihood of success, the less risk of harm must be shown, and vice versa.  <u>Id</u>.

Speculative injury is insufficient to support a finding of irreparable harm.  As the Ninth Circuit has stated,

> Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction . . . a plaintiff must do more than merely allege imminent harm to establish standing, a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.

<u>Carribean Marine Service Co. v. Baldridge</u>, 844 F.2d 668, 674 (9th Cir. 1988).

The parties have filed numerous affidavits and declarations in this matter.  The "weight to be given such evidence is a matter for the Court's discretion, upon consideration of the competence, personal knowledge and credibility of the affiant." <u>Bracco v. Lackner</u>, 462 F. Supp. 436, 442 n.3 (N.D. Cal. 1978) (reviewing motion for preliminary injunction); <u>see also</u>  <u>Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.</u>, 762 F.2d 1374, 1377 (9th Cir.1985) (explaining that when considering a motion for preliminary injunction the "weight to be given each [affiant's] statement[] is in the discretion of the trial court").  The Court, therefore, will review all the submitted evidence and give each affidavit and exhibit the consideration it deserves.

## Factual Background

Based on the evidence presented, the Court finds Plaintiff has established probable success on the merits of the breach of contract claim, however, the alleged irreparable

injury or risk of hardship is economic in nature and does not justify an injunction at this time.

Defendant Elloway was employed by Kettle Drilling, Inc. (now Timberline Drilling, Inc.) from approximately January 13, 1997 until he resigned on July 28, 2008. During Elloway's term of employment, he entered into The Supplemental Income Agreement ("SI Agreement") on January 1, 2007 with Kettle Drilling, Inc. The SI Agreement included certain non-compete language in section 6:

> 6.  <u>Employment Related Provisions.</u>  In consideration of the benefits described herein, Employee agrees to be bound by and to abide by the following employment related provisions.
>
> 6.1  Employee agrees to devote Employee's full knowledge, working time and best efforts diligently to the interests of the Corporation and not to engage in any activity in conflict with the interest of the Corporation.
>
> 6.2  Employee recognizes that during Employee's employment, Employee may develop or be exposed to unique, valuable and special confidential information, know-how and trade secrets which are the property of the Corporation or its customers, including pricing, drilling methodology, and other matters. Employee agrees that so long as such confidential information, know-how and trade secrets remain legally capable of protection, Employee will not use or divulge such information and secrets except as required by the duties of Employee's employment with the Corporation and will not undertake any employment competitive with the Corporation wherein the complete fulfillment of the duties of the competitive employment would inherently call upon Employee to reveal, base judgments upon, or otherwise use any such confidential information, know-how or trade secrets.
>
> 6.3  Employee agrees that manuals, promotional materials, reports, letters, notes, records, drawings, photographs, and unpublished writings used or produced by Employee or

coming into Employee's possession by or through
employment are the property of the Corporation and shall be
surrendered upon termination of employment without
retaining any copies, extracts or notes thereof.

6.4     Employee agrees that during Employee's employment, and
following termination of employment, Employee will not,
directly or indirectly, induce or attempt to induce any person
to leave employment with the Corporation for any purpose.

6.5     In consideration of the supplemental compensation described
herein, Employee covenants and agrees that during the period
of his employment with the Corporation and for a period of
five (5) years following the termination of his employment
(the "Covenant Term"), Employee shall not, either with the
customers of the Corporation as they exist from time to time,
or, with respect to post-termination competition, as they exist
on the date of termination of employment, or with respect to
potential customers within one hundred (100) miles of any
location where the Corporation is operating a drill rig at the
time of such proposed competitive activities, or, with respect
to post-termination competitive activities, within one hundred
(100) miles of any location where the Corporation is
operating a drill rig at the date of termination, directly or
indirectly (as a partner, stockholder, employee, agent,
consultant, financier, member of a limited liability company,
by participating in the ownership of or having any interest in,
or otherwise), engage in any of the following: (I) call on the
Corporation's customers for the purpose of selling those
customers products or hard rock drilling services competitive
with the products or services those customers are purchasing
or could purchase from the Corporation; (ii) engage in the sale
of products or hard rock drilling services similar to those sold
by the Corporation; or (iii) (A) contact any employees of
Corporation, directly or indirectly, for the purpose of seeking
to cause such employees to cease employment with
Corporation, (B) hire the employees of Corporation
individually or on behalf of any other person or entity, or (C)
encourage others to cause such employees to cease
employment with Corporation or hire such employees.

MEMORANDUM ORDER - 5

> 6.6    In addition to any other remedies, the Corporation shall have
> the right to seek and secure an injunction, without bond, to
> enforce these provisions.

Timberline maintains that Elloway is the primary officer or owner of the American

Drilling LLC and American Drilling Corp.  This fact is not disputed by Defendants.  At

issue in the request for preliminary injunction is whether Elloway as an individual or as

an officer or owner of American Drilling LLC or American Drilling Corp. is in violation

of the terms of the non-compete language contained in the SI Agreement.  For purposes

of the request for preliminary injunction, the Court finds the Defendants do appear to be

in violation of the terms of the non-compete clause entered by Elloway.

Section 6.5 of the SI Agreement sets forth the non-compete covenant applicable to

Elloway in consideration of Timberline's obligation to make a significant monetary

payment to Elloway if he retires with the company.  While covenants not to compete in

employment contracts are generally disfavored and are to be strictly construed, a

reasonable covenant will be enforced by the courts.   Pinnacle Performance, Inc. v.

Hessing, 17 P.3d 308, 311 (Idaho 2001).  In order for a non-compete clause to be

enforceable it must be reasonable as to  duration, geographical area and scope of activity.

Id.   Specifically, "a covenant not to compete is reasonable only if the covenant: (1) is not

greater than necessary to protect the employer in some legitimate business interest; (2) is

not unduly harsh and oppressive to the employee; and (3) is not injurious to the public."

Id. (citing Restatement (Second) of Contracts § 188 (1981)).  Finally, the Idaho Supreme

Court has sanctioned the "blue pencil rule" which allows a court to modify an otherwise

unreasonable covenant not to compete.  Id. at 313.  However, a court should not modify a covenant that is lacking essential terms if in doing so the court is no longer modifying the agreement but is rewriting the covenant.  Id.

In this case, Defendant Elloway argues he was coerced into signing the SI Agreement.  This fact is disputed by Plaintiff.  Because this factual issue is disputed, the Court cannot determine, for purposes of the request for a preliminary injunction, whether or not Elloway was coerced which could void the terms of the non-compete clause. Therefore, neither party has established a likelihood of success on the merits of the coercion issue and the Court will assume for purposes of the request for injunctive relief that Elloway had adequate time to review the SI Agreement and decided to sign the agreement in order to continue his employment.

"[N]on-compete provisions are permissible means to protect employers from their former employees who would use proprietary or other confidential business information to compete against them."  Intermountain Eye and Laser Centers, P.L.L.C. v. Miller, 127 P.3d 121, 128 (Idaho 2005).  In this case it is undisputed that Elloway would be the type of employee that an employer would want to have execute a non-compete clause. Elloway had numerous years in the mining business before he came to work for Kettle Drilling and the SI Agreement helped ensure that Elloway would stay with Timberline and would not compete against Timberline for a period of time if he left Timberline's employment.  This is a protectable business interest.

An employer also has "a protectable interest in the customer relationships its former employee established and/or nurtured while employed by the

employer and is entitled to protect itself from the risk that a former employee might appropriate customers by taking unfair advantage of the contacts developed while working for the employer." Id. (citing <u>Freiburger</u>, 141 Idaho at 420, 111 P.3d at 105 and quoting <u>W.R. Grace & Co. v. Mouyal</u>, 262 Ga. 464, 422 S.E.2d 529, 531 (1992)). This rule recognizes the general point of non-compete provisions in the first place: to protect employers from "the detrimental impact of competition by employees who, but for their employment, would not have had the ability to gain a special influence over clients or customers." <u>Id.</u>

<u>Intermountain</u> at 128-29.

For these reasons, the Court finds the Plaintiff has established probable success in its claim of a legitimate business purpose for the non-compete clause and that such clause is not in violation of public policy.  The Court further finds that Plaintiff has established probable success on the merits of its claim that the non-compete clause is not unduly restrictive or oppressive on Elloway.  In examining the non-compete clause in this particular case, the Court does find that the duration of the clause of five years is probably unreasonable.  The Idaho Code defines eighteen months as a rebuttable presumption for a reasonable duration.  Idaho Code § 44-2704.  While the Court will not decide at this time the appropriate duration of the non-compete clause, the parties are put on notice that the five year term is most likely unreasonable as a matter of law.   Moreover, the Court finds it could apply the blue pencil rule to modify the duration of this covenant and keep the covenant enforceable.

For purposes of the request for injunctive relief, the Court does not find the geographical scope of the covenant to be unreasonable since it is limited to 100 miles from where Timberline was operating at the time Elloway resigned and not 100 miles

from where ever a former client has any operations.  While this geographical scope may limit Elloway's employment opportunities, the hardrock mining at issue in this case is in limited geographical areas and Timberline would be entitled to protection in those areas in which it was operating when Elloway resigned.

As to the scope of activities Elloway is prohibited from performing, the Court finds Elloway is prohibited under the SI Agreement to:  (I) call on the Corporation's customers for the purpose of selling those customers products or hard rock drilling services competitive with the products or services those customers are purchasing or could purchase from the Corporation; (ii) engage in the sale of products or hard rock drilling services similar to those sold by the Corporation; or (iii) (A) contact any employees of Corporation, directly or indirectly, for the purpose of seeking to cause such employees to cease employment with Corporation, (B) hire the employees of Corporation individually or on behalf of any other person or entity, or (C) encourage others to cause such employees to cease employment with Corporation or hire such employees.   Section (I) and (iii) restrictions do not seem unreasonable in light of the legitimate business interests Timberline seeks to protect.  Elloway is restricted from providing mining services to  clients and former clients of Timberline at the time of Elloway's resignation and from hiring Timberline employees.

Section (ii) is more problematic.  Section (ii) prohibits Elloway from engaging in the sale of products or drilling services similar to those sold by Timberline. The Defendants argue the non-compete clause would keep Elloway from working in the

hardrock mining industry anywhere and that would be an unreasonable scope of activity restriction.  At this early stage in the litigation, the Court does not agree that the non-compete clause is so broad.  Plaintiffs conceded during oral argument that the limitation of "similar" services would be limited to the 100 mile radius around Timberline's operations at the time of Elloway's resignation.  Additionally, it is possible the Court could apply the "blue pencil rule" to clarify this section if necessary to make the covenant reasonable.

Nor does the Court find for purposes of the request for injunctive relief that it is relevant that certain former clients of Timberline would not hire Timberline again.  That is not a legal basis which would justify violating the terms of an enforceable non-compete clause.

In finding that Plaintiff has established probable success on the breach of contract claim, the Court specifically does not determine as a matter of law whether Elloway was coerced into signing the agreement, whether the essential terms of the non-compete are reasonable or whether the terms of the agreement are unambiguous.  These matters will need to ultimately be decided by a jury.

As to Timberline's claim of violations of Idaho's Trade Secret Act, the alleged disclosure of confidential information is disputed by the parties and the Court cannot make a meaningful determination of whether the information disclosed was publicly known in the mining industry or was confidential.  Accordingly, the Court cannot grant

MEMORANDUM ORDER - 10

the requested injunctive relief for these claims as Plaintiff has failed to establish probable success on the merits of such claims.

Having found probable success on the merits of the breach of contract claim, the Court must now determine if Timberline has established irreparable harm or a significant risk of hardships that tips sharply in Plaintiff's favor.  Assuming for purposes of this injunctive relief request that Plaintiff will have probable success on its claim the Defendants are in violation of the non-compete clause, Timberline would have a claim for damages related to the loss of business due to American Drilling LLC and American Drilling Corp.'s activities in violation of the terms of the non-compete clause.  These injuries, however, involve purely monetary harm. See, e.g.,  Oakland Tribune, Inc., 762 F.2d at 1376.  "It is well established . . . that such monetary injury is not normally considered irreparable."  Los Angeles Memorial Coliseum Comm'n. v. National Football League, 634 F.2d 1197, 1202 (9th Cir. 1980).  Therefore, to prevail on the request for a preliminary injunction, Timberline must demonstrate that an award of damages would be "seriously deficient as a remedy for the harm suffered." Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir.1984).  Timberline can satisfy this burden by demonstrating that an award of damages would come too late to remedy the harm, or that the Defendants may not be capable of satisfying a damages award, or that the nature of Timberline's loss renders damages too difficult to calculate.  See id.  Based on the record before this Court, the Court finds Timberline has not demonstrated that an award of damages at trial would come too late or that the Defendants would be incapable of

MEMORANDUM ORDER - 11

satisfying a damages award.  Further, while the damages due to lost profits may be difficult to calculate, damages are regularly awarded to rectify this type of harm and any monetary injury to Timberline can be quantified and assessed.  In this case, Timberline knows its customer list and where it had on-going operations on the date of Elloway's resignation.  Therefore, the Court finds that potential damages could be calculated and would provide an adequate remedy.  See, e.g., Los Angeles Memorial Coliseum Comm'n, 634 F.2d at 1202.

While Plaintiff has established probable success on the merits of the breach of contract claim, the Court does not find irreparable harm unable to be compensated for in the form of an award of damages at trial or that the risk of hardships tips sharply in Plaintiff's favor.  Accordingly, injunctive relief is not appropriate and the request for injunctive relief will be denied.

Order

Being fully advised in the premises, the Court hereby orders that the request for a preliminary injunction is DENIED and the temporary restraining order is lifted.

DATED:  **March 2, 2009**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER - 12